# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:11-CV-392-MOC-DSC

| | |
|---|---|
| RENETTA E. BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **MEMORANDUM AND RECOMMENDATION** |
| WAL-MART STORES, INC., ) | **AND ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on "Defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure," Doc. 22, filed December 1, 2011, and the parties' associated briefs and exhibits, Docs. 23, 24, 25 and 26.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Accepting the allegations of the Amended Complaint, Doc. 21, as true, as we must at this early stage in the proceeding, Plaintiff Renetta E. Brown ("Plaintiff") is an African-American/Native Hawaiian female. She was hired as an Inventory Control Specialist by James Dick, a Caucasian male, to work for Defendant Walmart Stores, Inc. ("Defendant") in July 2007. In December 2007, Plaintiff alleges that Dick agreed to promote her to Department Manager over the Mens Department

but did not formally do so, despite her assuming the responsibilities of that position, as well as that of the Manager of the Infants and Girls Departments. Although Plaintiff assumed these new responsibilities, she alleges that Dick refused to formally promote her or increase her salary as they had agreed. During that same time, Plaintiff alleges that Dick regularly required her to work uncredited overtime hours and to come to the store at unscheduled times.

In June 2008, Plaintiff was diagnosed with a major depressive disorder. Her physician advised that her condition was attributable to her working conditions and recommended that she take some time off. Consequently, Plaintiff requested and was approved for three months of leave pursuant to the Family and Medical Leave Act ("FMLA"). In September 2008, Plaintiff returned to work as Infants and Girls Departments Manager. Plaintiff alleges that Dick refused to provide her with any sales associates. Following her return to work, Plaintiff continued to struggle with depression and requested and received additional periods of FMLA leave.

Plaintiff alleges that from the time she returned to work in September 2008 until her resignation, Dick engaged in a consistent pattern of making insulting and harassing remarks to her, which caused her severe distress and were specifically intended by Dick to induce her to resign. Plaintiff claims that these remarks occurred approximately weekly, in the presence of customers, and included the following:

- "Dick repeatedly mocked the Plaintiff for crying easily, for being on medication, and threatened to fire her if he caught her taking 'narcotics'";
- Dick referred to Plaintiff as "Diana Ross," "Downtown Julie Brown," "Justice" (in reference to a Janet Jackson film character), and referred to her style of dress as "ghetto fabulous" and "so ghetto";
- Dick "frequently referred to Plaintiff, customers and other Wal-Mart staff as

2

> 'bitches'"; and

- "On several occasions, Dick urged the Plaintiff to quit her job, claiming that her emotional issues were a burden upon Defendant. In one instance, Dick remarked to the Plaintiff that 'Ghetto birds fly away. Why don't you just quit?'"

Am. Complaint at ¶ 16. Plaintiff alleges that Dick's conduct caused her to cry and become so emotionally upset that she often requested additional break periods in order to regain her composure.

In March 2010, Plaintiff sent a complaint about Dick's conduct by e-mail to Regional Vice President Ronny Hayes. Hayes responded that he would ask District Manager Richard Hinkebein and Human Resources Manager Jan Walker to speak with Plaintiff regarding her concerns. Hinkebein spoke with Plaintiff and told her she was being "sensitive" and to stop complaining about Dick.

On April 20, 2010, Plaintiff filed a charge of discrimination with the EEOC and checked the boxes on the Charge form for claims of discrimination based on race, disability and retaliation. As part of her Charge, Plaintiff alleged that "[s]tarting from in or about October 14, 2009, James Dick subjected me daily to unwelcome comments: i.e.: "Ghetto Bird," Cheap labor, "too Ghetto"; "Blue"; "So ghetto" when looking at my rebirth tattoos." Doc. 22, Ex. 1. Plaintiff alleged that "I believe that I was discriminated and retaliated against because of my Race (African American/Native Hawaiian) in violation of Title VII of the Civil Rights Act of 1964, as amended. I also believe I was discriminated and retaliated against because of my impairment, in violation of the Americans with disabilities Act of 1990, as amended." Id. Plaintiff's Charge contains no claims of sex discrimination or harassment or that she was constructively discharged or otherwise "forced" to resign. In fact, at the time the Charge was filed Plaintiff was still working for Defendant.

In August 2010, Plaintiff resigned from Wal-Mart upon the advice of her physician. Plaintiff

does not assert that she filed a second EEOC Charge or that she amended her initial Charge. On May 16, 2011, the EEOC issued Plaintiff a Letter of Dismissal and Notice of Rights informing her of her right to sue. On August 11, 2011, Plaintiff commenced this lawsuit, Doc. 1, against Defendant. On September 28, 2011, Defendant filed a Motion to Dismiss, Doc. 15. On October 16, 2011, Plaintiff voluntarily dismissed Dick as a Defendant, Doc. 17, and on October 17, 2011, she requested leave to amend her Complaint, Doc. 18. On October 31, 2011, the Court issued an Order, Doc. 20, granting Plaintiff's Motion for Leave to Amend, Doc. 18. On November 15, 2011, Plaintiff filed her Amended Complaint, Doc. 21. In her Amended Complaint, Plaintiff asserts the following causes of action against Defendant: (1) racial and sexual harassment in violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) intentional infliction of emotional distress ("IIED"); and (3) Title VII constructive discharge.

On December 1, 2011, Defendant filed this Motion to Dismiss Plaintiff's Amended Complaint, Doc. 22. Defendant argues that Plaintiff's claims should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). More specifically, Defendant argues that Plaintiff's claim for sexual harassment fails because she did not exhaust her administrative remedies as to that claim and is time-barred from doing so now. Defendant asserts that the claim must be dismissed for lack of subject matter jurisdiction. Additionally, Defendant argues that the Title VII racial and the sexual harassment claims fail because Plaintiff does not allege facts to support them. Defendant also argues that Plaintiff's IIED claim fails because she does not allege sufficient facts to support either that Defendant engaged in "extreme or outrageous" conduct or that she suffered from "severe emotional distress" as a result of such alleged conduct. Finally, Defendant argues that Plaintiff's constructive discharge claim should be dismissed because she never exhausted her administrative remedies as to that claim and failed to assert sufficient facts in her Amended

Complaint to support the claim.

In "Plaintiff's Brief in Support of Reply to Defendant's Motion to Dismiss," Doc. 25, Plaintiff argues that she did exhaust her administrative remedies with regard to the sexual harassment claim because any reasonable investigation of the racial harassment charged in the EEOC Charge would have uncovered the sexual harassment. Additionally, Plaintiff argues that she has set forth sufficient facts in her Amended Complaint to support her claims for racial and sexual harassment and intentional infliction of emotional distress. Plaintiff does not address Defendant's assertions that her constructive discharge claim should be dismissed.

The Motion to Dismiss has been fully briefed and is now ripe for review.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1) Standard

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff has the burden of proving that subject matter jurisdiction exists. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

### B. Rule 12(b)(6) Standard

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded

allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 554-55) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will

... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id. at 1951-52.

Applying these principles in Iqbal to the plaintiff's allegation that the defendants had adopted a discriminatory policy permitting "restrictive conditions of confinement" for post-September 11 detainees, the Supreme Court held "the complaint does not show, or even intimate, that petitioners purposefully housed detainees in [restrictive conditions] due to their race, religion or national origin." Iqbal, 129 S. Ct. at 1952. Accordingly, dismissal was appropriate. Id.

### III. DISCUSSION OF CLAIMS

#### A. Title VII Sexual Harassment Claim

"Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir.2002). It is well settled that the scope of Plaintiff's EEOC charge defines the scope of any ensuing lawsuit. Id. (citing Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000)). The Fourth Circuit has held that "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir.1996). Claims that fall outside of the scope of the EEOC charge are procedurally barred. Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156

(4th Cir.1995). The exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter may be resolved out of court if possible. Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005).

In this case, Plaintiff did not raise the issue of Title VII sexual harassment anywhere in her EEOC Charge. She did not check the box labeled "sex," did not mention "sex" in the "Particulars" section of the Charge narrative, and did not list "sex discrimination" or "sexual harassment" in her summation at the end of her Charge narrative. She alleged discrimination based on "her race" and "her impairment." Doc. 22, Ex. 1.

Plaintiff argues that any reasonable investigation of the claims in her Charge narrative would have uncovered the sexual harassment. The Court disagrees. See, e.g., Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir.2005)("[T]he plaintiff's claim generally will be barred if his charge alleges discrimination on one basis-such as race-and he introduces another basis in formal litigation-such as sex."); Miles, 429 F.3d at 491 (holding plaintiff failed to exhaust her administrative remedies because neither defendant employer nor the EEOC would have been put on notice of a retaliation claim because of the deficiencies in the plaintiff's EEOC charge); Evans, 80 F.3d at 963 (dismissing age discrimination charge where EEOC charge only alleged sex discrimination, holding that "age discrimination does not necessarily flow from sex discrimination and vice versa"). The Court finds that Plaintiff failed to exhaust her administrative remedies with respect to her sexual harassment claim, and thus the Court lacks subject matter jurisdiction. Therefore, the undersigned respectfully recommends that Defendant's Motion to Dismiss with respect to Plaintiff's Title VII sexual harassment claim be granted.

### B. Title VII Constructive Discharge Claim

Plaintiff's brief, Doc. 25, did not address Defendant's arguments that her constructive

discharge claim should be dismissed because she failed to exhaust her administrative remedies and that her Amended Complaint contains insufficient allegations to support this claim. The Court finds that Plaintiff failed to exhaust her administrative remedies with regard to her constructive discharge claim.

Before bringing suit for constructive discharge under Title VII, a plaintiff must exhaust his administrative remedies. See Spencer v. Ashcroft, 147 Fed. Appx. 373, 375 (4th Cir. 2005)(holding that administrative remedies were not exhausted because claim for constructive discharge was not "imbedded" in EEOC complaint). The Supreme Court has made clear that a claim for constructive discharge is not necessarily saved by the "continuing violations" doctrine. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)(indicating that discrete acts such as termination and failure to promote require exhaustion). The Fourth Circuit has held that constructive discharge is a discrete discriminatory act subject to administrative exhaustion. Malghan v. Evans, 118 Fed. Appx. 731, 734 (4th Cir. 2004)(citing Young v. Nat'l Ctr. For Health Serv. Research, 828 F.2d 235, 237-38 (4th Cir. 1987)). See also, Simmons v. Marsh, 917 F.2d 23 (4th Cir. 1990)(citing De Medina v. Reinhardt, 444 F.Supp. 573, 578-79 (D.D.C. 1978)(holding that the plaintiff failed to exhaust her constructive discharge claim and dismissing same where the plaintiff's administrative complaint lacked any indication she was claiming constructive discharge and she failed to attempt to amend her administrative complaint )).

Plaintiff filed her EEOC Charge before she voluntarily resigned from Wal-Mart. Plaintiff did not amend her EEOC Charge or file a subsequent Charge. Because constructive discharge is a discrete discriminatory act subject to administrative exhaustion and this claim was not included in Plaintiff's EEOC Charge, this claim must be dismissed. Therefore, the undersigned respectfully recommends that Defendant's Motion to Dismiss with respect to Plaintiff's Title VII constructive

discharge claim be granted.

### C. Title VII Racial Harassment Claim

In order to state a prima facie hostile work environment harassment claim based on race, Plaintiff must show that: (1) she was harassed "because of" her race; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive so as to create an abusive working environment; and (4) some basis exists for imputing liability to the employer. Bonds v. Leavitt, 629 F.3d 369, 385 (4th Cir. 2011).

Title VII "does not set forth 'a general civility code for the American workplace.'" Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006) (internal citations omitted). As the Fourth Circuit has recognized, "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). It is insufficient to merely plead facts establishing "callous behavior by [one's] superiors." Id. at 315-16 (quoting Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003)); see Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (the " 'mere utterance of an ... epithet which engenders offensive feelings in a employee[ ]' does not sufficiently affect the conditions of employment to implicate Title VII") (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)) (internal citation omitted).

The plaintiff must plead facts showing that she perceived the harassment to be hostile or abusive, and that the harassment was "sufficiently severe or pervasive" so as to "create[ ] an environment that a reasonable person would find hostile or abusive." Jennings v. Univ. of North Carolina, 482 F.3d 686, 696 (4th Cir.2007) (internal quotations omitted); see Harris, 510 U.S. at 21-22 ("if the victim does not subjectively perceive the environment to be abusive, ... there is no Title VII violation"). Thus, the plaintiff must bring forward facts showing both subjective and

objective "severe or pervasive" harassment. Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir.2003) (en banc) (citing Harris, 510 U.S. at 21-22). In determining whether conduct is so severe or pervasive as to be objectively intolerable, a court examines the frequency of the conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Fox v. Gen. Motors Corp., 247 F.3d 169, 178 (4th Cir. 2001).

The Court finds that the incidents cited by Plaintiff in her Amended Complaint are neither severe nor pervasive enough to form the basis for a hostile work environment claim based upon race. Use of the term "ghetto" does not in and of itself implicate Plaintiff's race. The comments directed at Plaintiff about her appearance do not rise to the level of being physically threatening or humiliating. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) ( "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not" give rise to a hostile environment claim.). Nor do the criticisms regarding Plaintiff's attendance and performance amount to actionable harassment based on race. See Bass, 324 F.3d at 765 (emphasizing plaintiff's allegations "merely tell a story of a workplace dispute regarding her reassignment and some perhaps callous behavior by her superiors" and were insufficient to state hostile work environment claim). Because Plaintiff has not identified the severe or pervasive conduct necessary to demonstrate a hostile work environment, her racial harassment claim fails. Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiff's Title VII racial harassment claim be granted.

### D. Intentional Infliction of Emotional Distress Claim

Under North Carolina law, in order to maintain an action for IIED, a plaintiff must show: (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional

distress. Dickens v. Puryear, 276 S.E.2d 325, 335 (N.C. 1981). "Conduct is extreme and outrageous when it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Guthrie v. Conroy, 567 S.E.2d 403, 408 (N.C. App. 2002) (quoting Briggs v. Rosenthal, 327 S.E.2d 308, 311 (N.C. App.), cert. denied, 332 S.E.2d 479 (N.C. 1985). "North Carolina courts have been extremely reluctant to find actionable IIED claims in the employment context . . ." Efird v. Riley, 342 F.Supp.2d 413, 427 (M.D.N.C. 2004).

While a claim of IIED may be based upon acts of sexual harassment, the behavior must be more than "mere insults, indignities, and threats." Hogan v. Forsyth Country Club Co., 340 S.E.2d 116, 123 (N.C. App. 1986) (finding no extreme or outrageous conduct where a supervisor screamed at employees, called them names, cursed at them, disrupted their work, threw menus at them, refused to grant pregnancy leave, and terminated an employee who left work due to labor pains). Furthermore, "plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind." Id. The determination of whether conduct rises to the level of extreme and outrageous is a question of law. Guthrie, 567 S.E.2d at 408.

In Guthrie, the North Carolina Court of Appeals considered a claim for IIED based on sexual harassment and stated:

> [O]ur review of the relevant case law indicates that claims of IIED (intentional infliction of emotional distress) based upon allegations of sexual harassment generally have included one or more of the following: an unfair power relationship between defendant and plaintiff; explicitly obscene or "X rated" language; sexual advances towards plaintiff; statements expressing desire to engage in sexual relations with plaintiff; or, defendant either touching plaintiff's private areas or touching any part of the plaintiff's body with his private parts.

567 S.E.2d at 411. See also, Bratcher v. Pharmaceutical Product Dev., Inc., 545 F.Supp.2d 533, 545

12

(E.D.N.C. 2008) ("In cases where North Carolina courts have found IIED claims actionable, the conduct has been extremely egregious, and involved sexual advances, obscene language, and inappropriate touching."); Sheaffer v. County of Chatham, 337 F.Supp.2d 709, 733 n.14 (M.D.N.C. 2004) ("North Carolina courts have often found extreme and outrageous conduct only in cases involving sexual advances, obscene language and inappropriate touching.").

Plaintiff alleges that the "sexual and racial harassment" by Dick was extreme and outrageous and caused her severe emotional distress. She argues that her supervisor's conduct in mocking her, insulting her and causing her to cry in the presence of customers and other employees, when he knew she was on medication, is extreme and outrageous. Even taking Plaintiff's allegations as true, these allegations do not rise to the level of being atrocious and utterly intolerable in a civilized community, and do not constitute extreme and outrageous conduct to support a claim for IIED. Therefore, the undersigned respectfully recommends that Plaintiff's Motion to Dismiss be granted with respect to this claim.

### III. ORDER

**IT IS ORDERED** that all further proceedings in this action, including all discovery, are **STAYED** pending the District Judge's ruling on this Memorandum and Recommendation and Order.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure," Doc. 22, be **GRANTED** and Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Max O. Cogburn, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: January 17, 2012

_____
David S. Cayer
United States Magistrate Judge